Walter PHIFER, Individually and On Behalf of All Other Persons Similarly Situated, Plaintiffs,

v.

UNION CARBIDE CORPORATION, and A. E. Epstein & Sons, Inc., and G. E. Bailie, President, Union Carbide Corporation, and William S. Sneath, Chairman of the Board of Directors and Chief Executive Officer, Union Carbide Corporation, and Warren M. Anderson, President and Chief Operating Officer, Union Carbide Corporation, and Gerald R. Toy, Division Vice-President and General Manager, Union Carbide Corporation, Defendants.

No. J–C–80–42.

United States District Court,
E. D. Arkansas,
Jonesboro Division.

July 7, 1980.

J. Courtney Wilson, New Orleans, for plaintiffs.

C. David Landis, Jonesboro, Ark., J. Bruce Ipe, New York City, for defendants.

ORDER

ARNOLD, Circuit Judge.

Plaintiff Walter Phifer brought this action for damages individually and on behalf of others alleging he had sustained injuries as a result of the intentional and negligent acts of defendants. Defendants in the suit are Phifer's former employer, Union Carbide Corporation, G. E. Bailie, President, Films Packaging Division, William S. Sneath, Chairman of the Board of Directors and Chief Executive Officer of Union Carbide, Warren M. Anderson, President and

Chief Operating Officer of Union Carbide, Gerald R. Toy, Division Vice-President and General Manager of Union Carbide, and A. E. Epstein & Sons, Inc., architects for the Union Carbide plant in Osceola, Arkansas. Union Carbide and the individual defendants have moved the Court to dismiss the complaint for failure to state a claim on which relief can be granted. These motions are granted. Individual defendants' motion to strike the pleadings and impose sanctions on plaintiff's attorney is denied.

Walter Phifer worked at the Union Carbide facility in Osceola from April. of 1976 until February 20, 1977, as plant chemist. About October 15, 1976, the plant began start-up operations. It is during the period between October 15, 1976, and February 20, 1977, that plaintiff claims to have been injured by daily exposure to carbon disulfide, sulfuric acid, and hydrogen sulfide. Plaintiff alleges that Union Carbide and its officers failed to warn him about the possible harmful effects of these chemicals, failed to provide him with protective clothing, and failed to provide adequate ventilation at the Osceola plant. He filed this suit on February 20, 1980.

Union Carbide and the individual defendants have presented four bases for dismissing the complaint as to them. The first of these is that the Court lacks subject-matter jurisdiction because plaintiff's sole remedy against Union Carbide is under Arkansas's Workers' Compensation Law. The Court agrees with defendants on this point, and it is, therefore, unnecessary to discuss the other proposed bases for dismissal.

■ Under Arkansas law, the exclusive remedy for an employee who is injured during the course and within the scope of his employment is to file a claim under the provisions of the Workers' Compensation Law. By the very wording of the statute, this remedy is "exclusive." Ark.Stat.Ann. § 81–1304. Federal district courts in this state have recognized that they, like the state courts, have no subject-matter juris-

diction in cases in which exclusive jurisdiction is vested in the Workers' Compensation Commission. *Shultz v. Lion Oil Company*, 116 F.Supp. 119, 121 (W.D.Ark. 1952), *appeal dismissed*, 202 F.2d 752 (8th Cir. 1953). *Accord, Thomas v. Union Carbide Corporation*, No. J–C–79–139 (E.D.Ark. [January 7, 1980]), dismissed by this Court on the same grounds. The only question remaining is whether plaintiff's allegations of intentional torts by Union Carbide and the individual defendants place this case within a narrow exception to the exclusive-jurisdiction rule.

Plaintiff's complaint includes the following allegations:

The damage to Plaintiff was caused solely by the intentional acts of Union Carbide and its officers and the negligence of A. E. Epstein & Sons, Inc. to wit:

(a) Failure to take the necessary steps to prevent Plaintiff's exposure to damaging levels of the dangerous gases and substances including, but not limited to, the failure to properly coordinate the rate of ventilation with the production of poisonous gases and substances;

(b) Failure to warn Plaintiff of the full neurotoxic nature of carbon disulfide, including its potential for causing nerve and brain damage;

(c) Failure to warn Plaintiff of the full toxic nature of hydrogen sulfide and sulfuric acid;

(d) Failure to provide Plaintiff with any personal protective gear whatsoever, including, but not limited to raincoats and respirators;

(e) Failure to warn Plaintiff that the toxic chemicals could be picked up by his work clothes, retained, and thereby continue to cause damage to him off the job; and

(f) Failure to include adequate and necessary ventilation systems in the design of the Union Carbide plant in Osceola, Arkansas.[1]

.     .     .     .     .

1. Subsection (f) clearly applies to the negligence action against A. E. Epstein & Sons, Inc.

It is not clear whether Subsections (a) through (e) apply to Union Carbide only, or if some are

Defendants Union Carbide and its officers are also liable to Plaintiff for punitive damages because of their intentional acts toward him as evidenced by the following facts: (a) that Union Carbide only provided some of its own employees with raincoats and/or respirators, but neglected to do so for Plaintiff; (b) as further evidence by Union Carbide's unique knowledge of the neurotoxicity of $CS_2$ through its operation since 1971 of the Toxicological Information Response Center at Oak Ridge, Tennessee, and its publication there of Toxicity and Analysis of Carbon Disulfide, an annotated bibliography of 369 references on the analytical methods, toxic effects on humans and animals, and other environmental effects of carbon disulfide.

In considering this motion to dismiss the Court must take as true all well-pleaded facts. Assuming, *arguendo*, that Mr. Phifer could prove all of the allegations quoted above, he still would not have proved that defendants committed intentional torts. of the kind required under Arkansas law to give him a common-law action in tort against Union Carbide and the individual employee defendants.

The Supreme Court of Arkansas has recently addressed this issue, *en banc*, in an opinion which this Court finds to be controlling here. In *Griffin v. George's, Inc.*, 267 Ark. 91, 589 S.W.2d 24 (1979), a seventeen-year-old employee filed a complaint against his employer for injuries sustained during the course of his employment. Plaintiff had been severely injured when he fell into an unguarded grain auger which had no protective grate. The Court characterized the auger as "an extreme hazard to persons working near it." 267 Ark. at 93, 589 S.W.2d at 25. The Court detailed several state and federal safety regulations which were being violated and found that the employer was aware of the dangerous condition and "willfully and wantonly disregarded this known danger." *Ibid.* The employer had ordered plaintiff to perform his duty without giving him any instructions in the proper and safe manner of performance of his duties, in spite of the fact "that it was substantially certain that an employee in Griffin's position would be injured by reason thereof." *Ibid.*

■ As in the instant case, Griffin sought to avoid the exclusive workers' compensation remedy by characterizing the employer's acts as intentional torts. The Supreme Court held that he had failed to meet his burden. Only if an employer commits acts with an actual, specific, and deliberate intent to injure the employee will the employee have a common-law action in tort.[2] *Id.* at 96, 589 S.W.2d at 27. The Court quoted with approval the following section from *Larson's Workmen's Compensation Law* as the appropriate construction of Arkansas's Act.

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as *knowingly permitting a hazardous work condition to exist*, knowingly ordering claimant to perform an extremely dangerous job, *willfully failing to furnish a safe place to work*, or even willfully and unlawfully violating a safety statute, *this still falls short of the kind of actual intention to injure that robs the injury of accidental character.*

267 Ark. at 96, 589 S.W.2d at 27, quoting 2A *Larson's Workmen's Compensation Law* § 68.13, at 13–8 (1976) (emphasis added).

■ Examining plaintiff's pleadings in light of the *Griffin* case, this Court holds that each and every one of the allegations, if proved, would still fall short of the actual, direct, specific, and deliberate intent re-

---

meant to apply to Epstein also. The Court will assume, for purposes of the motions to dismiss, that Subsections (a) through (e) all are charges against Union Carbide and the individual employee defendants.

2. In *Heskett v. Fisher Laundry & Cleaners, Inc.*, 217 Ark. 350, 230 S.W.2d 28 (1950), the Court held that a vicious, intentional, unprovoked, and premeditated assault by the employer upon the employee was not an accident so as to come within the provisions of the Workers' Compensation Act.

quired to maintain this action.[3] Plaintiff's sole remedy against the Union Carbide defendants is before the Arkansas Workers' Compensation Commission.

In summary, the complaint is dismissed for failure to state a claim on which relief can be granted against Union Carbide Corporation, G. E. Bailie, William S. Sneath, Warren M. Anderson, and Gerald R. Toy. Plaintiff has not filed a motion for class certification within 90 days after filing his complaint, as required by local Rule 24. The Clerk is directed to transfer this action from the Class Action Docket to the regular civil docket.

---

**3.** Plaintiff has failed to allege any personal involvement by the individual defendants in the acts alleged. Even if the workers' compensation remedy did not bar this action, these individuals would not be liable for the corporation's acts unless they had personally directed that the acts be done, or participated or cooperated therein. The general rule is that officers, directors, employees, and shareholders are distinct from the corporation and not liable for the corporation's acts or failure to act. 3 Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137 (rev. perm. ed. 1975).